**Angelina MARROQUIN, Individually and as guardian of Manuel Marroquin, an incompetent, Appellant,**

v.

**LIFE MANAGEMENT CENTER FOR MH/MR SERVICES, Appellee.**

No. 08–95–00261–CV.

Court of Appeals of Texas, El Paso.

July 11, 1996.

Rehearing Overruled Aug. 14, 1996.

Joe A. Spencer, Jr., Heather A. Ronconi, El Paso, for appellant.

Cynthia S. Anderson, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

Our opinion of June 6, 1996 is withdrawn, appellee's motion for rehearing is granted, and without hearing oral argument, the following is substituted as the opinion of the court.

Appellant Angelina Marroquin (Marroquin), challenges the trial court's granting of a summary judgment favoring appellee Life Management Center for MH/MR Services (LMC). We affirm.

### FACTS

Manuel Marroquin is a mentally retarded individual with an Intelligence Quotient between 33 and 40.[1] LMC is a governmental unit as defined by TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 (Vernon Supp.1996). On March 3, 1993, Marroquin was attending appellee's day activity center in northeast El Paso when an LMC employee found him and another client in one of the facility's bathrooms masturbating. On April 22, 1993, Mr. Marroquin left the facility in the company of two individuals, one of whom was the same person found with Mr. Marroquin in the bathroom. The three went into the nearby desert and engaged in sexual activity. At the time of this incident, Mr. Marroquin was his own legal guardian. Angelina Marroquin became her son's legal guardian soon after and brought a negligence action against LMC on his behalf.

Marroquin claimed that LMC was negligent in its supervision of Mr. Marroquin and was negligent in the utilization of its property and patient records. Specifically, Marroquin asserts that while there were locks on the doors and the gates of the facility, there were no alarms or any type of video surveillance to monitor the arrivals and departures of the clients, nor were the locks used to keep clients inside the facility.

The summary judgment evidence regarding security at the facility revealed that the doors and gates of the facility were not

---

1. Although LMC asserts in its motion for rehearing that this fact is found only in plaintiff's brief, and was therefore not a part of the summary judgement evidence, that is not correct. Marroquin's I.Q. is mentioned several times in the deposition testimony which was a part of plaintiff's response to summary judgment.

locked. The doors locked from the outside when closed but opened when pushed from the inside. The facility provided no security alarms and the patients could come and go at will. In the summer, some of the doors were left open to facilitate the air conditioning. There were no security guards at the treatment center and there was no video surveillance equipment. The doors had no alarm apparatus that would signal if the doors were opened. Several employees of the facility stated they felt there was no problem regarding unauthorized persons entering the facility. There was also testimony that Mr. Marroquin required little supervision and he "was never known to wander off."

. Appellee LMC filed its motion for summary judgment urging that there was no waiver of governmental immunity under these facts. The trial court granted summary judgment.

### STANDARD OF REVIEW

In reviewing a summary judgment on appeal, the reviewing court must determine whether the successful movant in the court below carried its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex. 1985). In making the decision whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his or her favor. *Id.* at 548–49. If the movant submits summary judgment evidence which disproves at least one element of the plaintiff's case, then summary judgment should be granted. *Wyatt v. Furr's Supermarkets, Inc.,* 908 S.W.2d 266, 268 (Tex.App.—El Paso 1995, writ denied); *Rayos v. Chrysler Credit Corp.,* 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

### IMMUNITY

In appellant's sole point of error, she asserts that the court erred in granting appellee's motion for summary judgment because there existed genuine issues of material fact as to appellee's defense of governmental immunity. Specifically, appellant claims that a fact question exists regarding appellee's misuse of its real and personal property which constitutes a waiver of its claims to governmental immunity and that this misuse proximately caused appellant's injuries. Appellant further contends that a fact question exists regarding inadequate or defective conditions of appellee's real and personal property which also constitutes a waiver.

Both parties agree that LMC is a unit of government entitled to assert the doctrine of sovereign immunity. TEX.CIV.PRAC. & REM. CODE ANN. § 101.021 (Vernon 1986) provides for a limited waiver of governmental immunity.

A governmental unit in the state is liable for:

. . .

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Plaintiff asserts that Manuel Marroquin's injuries were caused by LMC's failure to properly utilize tangible personal property such as locks, alarms, and electronic monitoring devices. She also alleges that appellee failed to properly use tangible personal property in the form of patient progress notes, client reports, and evaluations.

Injuries resulting from the misuse of information, even if that information is recorded in writing, does not provide a waiver of governmental immunity for injuries caused by the use of tangible personal property. *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 179 (Tex. 1994). This reasoning extends to a patient's medical records. *Kassen v. Hatley,* 887 S.W.2d 4, 11 (Tex.1994). Thus, we conclude summary judgment was properly entered as to plaintiff's allegations concerning progress notes, reports, and evaluations.

The term "use" from the above-quoted statute means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux v. Hamshire–Fan-*

*nett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992). The non-use of property cannot support a claim under the Texas Tort Claims Act. *Kassen,* 887 S.W.2d at 14. In *Kassen,* the plaintiffs alleged, in part, that the failure to provide medication for a psychiatric patient constituted a use of tangible property which caused a death. The court reasoned that this was a claim of non-use which did not trigger a waiver of sovereign immunity under the Texas Tort Claims Act. *Id.* Furthermore, failure to use a building does not constitute a use of tangible property. *Bourne v. Nueces County Hospital District,* 749 S.W.2d 630, 632 (Tex.App.—Corpus Christi 1988, writ denied). In *Bourne,* a mental health patient was discharged into the custody of the plaintiff. The former patient set a fire in the plaintiff's home resulting in the death of her husband and daughter. The plaintiff contended that in prematurely discharging the patient, the hospital failed to "use" its building to confine the patient and this constituted a use of property. *Bourne,* 749 S.W.2d at 631. The court held that the plaintiff's cause of action alleged a "non-use" rather than a use of property. The limited waiver of governmental immunity did not extend to this "non-use." *Id.* at 632.

■ An incomplete use, however, may constitute a waiver of governmental immunity. In *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976), the plaintiff suffered a knee injury while playing varsity football. He alleged that the university was negligent for failing to provide proper equipment, for failing to allow him to wear proper equipment, and for providing defective equipment. *Id.* at 298. The court held that the affirmative allegation that defective equipment was furnished stated a case within the statutory waiver of immunity arising from some condition or use of tangible property. The court also reasoned that the allegation of failure to furnish proper protective equipment also provided a statutory waiver. *Id.* at 300. As proper protective equipment was an integral part of the uniform provided to the plaintiff, the failure to provide proper equipment constituted a waiver of governmental immunity. *Id.* The *Lowe* court concluded plaintiff's allegation that the university failed to furnish proper protective equipment was indistin-

guishable from *Overton Memorial Hospital v. McGuire,* 518 S.W.2d 528 (Tex.1975). In *McGuire,* the plaintiff sued the hospital for negligently failing to provide a hospital bed with bed rails. The court held that in such a circumstance, the hospital could not assert governmental immunity to avoid liability. *Id.* at 529.

Similarly, in *Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169 (Tex.1989), employees of MHMR took several patients to swim at a lake. The employees were aware that one patient suffered from epileptic seizures that occasionally caused him to loose consciousness. MHMR was responsible for insuring patients were dressed in appropriate swimming attire. Life preservers were available and had been previously supplied to another patient. The epileptic patient was furnished no life preserver, however, and drowned. *Robinson,* 780 S.W.2d at 169. The court held that the MHMR employees were responsible for providing swimming attire and that the life preserver was just as much a part of the swimming attire as the protective equipment was a part of the football uniform in *Lowe. Id. at* 171.

■ In this case, on rehearing, LMC relies upon the recent Supreme Court opinion of *Kerrville State Hospital v. Clark,* 923 S.W.2d 582 (1996) to reurge its position that the failure to provide doors locking from the inside cannot be interpreted as falling within the waiver doctrine outlined in *Lowe* and *Robinson.* Upon reviewing the facts here in light of *Clark,* we agree.

In that case, the Clarks sued Kerrville State Hospital for the death of their daughter at the hands of her husband, a recently-released psychiatric patient. The Clarks alleged that the hospital, by giving the husband an oral form of Thorazine rather than an injectable drug, used or misused tangible personal property because the hospital knew he had not been taking his oral Thorazine and that he became violent when not medicated. *Clark,* 923 S.W.2d at 584. The Supreme Court reviewed these facts in light of *Lowe* and *Robinson,* and held:

These cases represent perhaps the outer bounds of what we have defined as use of

tangible personal property. We did not intend, in deciding these cases, to allow both use and non-use of property to result in waiver of immunity under the Act. Such a result would be tantamount to abolishing governmental immunity, contrary to the limited waiver the Legislature clearly intended. The precedential value of these cases is therefore limited to *claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries.* For example, if a hospital provided a patient with a bed lacking bed rails and the lack of this protective equipment led to the patient's injury, the Act's waiver provisions would be implicated. *Id.* at 585 [emphasis added].

The court concluded that prescribing one form of drug treatment over another, even though the unprescribed method of treatment might be safer, was a medical decision rather than a non-use of property and did not trigger a waiver of immunity.

In the present case, Marroquin alleged misuse of real and personal property and inadequate or defective condition of LMC's real and personal property. The summary judgment evidence revealed that the facility had no security monitoring devices or alarms. It is clear that this is non-use of tangible property, and immunity is not waived. The evidence also reveals that there were locks on the doors and these were locked only from the outside. To withstand summary judgment in light of *Clark*, this failure to have the doors lock from within must constitute the provision of property lacking an integral safety component and the lack of this component must have led to Mr. Marroquin's injuries. That is, the issue must be whether LMC provided a building that lacked an integral safety component in the form of doors locked from the inside. The summary judgment evidence does not support such a construction. The facility Mr. Marroquin at-

tended had an open door policy; its clients were not restrained or prohibited from leaving the building if they wished, and Mr. Marroquin "was never known to wander off." [2] We conclude that LMC's decision to keep doors unlocked on the inside was a policy decision, not an incomplete use of tangible property, and that therefore it cannot constitute a waiver of sovereign immunity under the Texas Tort Claims Act. For these reasons, we believe the trial court properly entered summary judgment in favor of defendant here.

### CONCLUSION

The summary judgment is affirmed.

---

**2.** Plaintiff's pleadings include treatment records indicating that "IDT agreed with Manuel's mother for safety reasons, Manuel is not allowed to go anywhere by himself, only with family members and NEDT Staff." These records are not part of the summary judgment evidence, however, and

therefore this court cannot consider them in determining the existence of a fact question. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Shawell v. Pend Oreille Oil & Gas Company,* 823 S.W.2d 336, 338 (Tex.App.—Texarkana 1991, writ denied).