# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00389-CV

**Kristy Bonham, Appellant**

**v.**

**Texas Department of Criminal Justice, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 19706-A, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

## O P I N I O N

Kristy Bonham appeals the district court=s grant of the Texas Department of Criminal Justice=s (the ADepartment@) plea to the jurisdiction and the final judgment that dismissed her claims against the Department. At issue is whether Bonham=s claims against the Department to recover damages related to injuries she sustained after being sexually assaulted at a state jail facility were within the Texas Tort Claims Act=s[1] (the AAct@) waiver of sovereign immunity. Because we conclude that Bonham=s claims were not within the Act=s waiver of sovereign immunity, we will affirm the district court=s judgment.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. '' 101.001-.109 (West 1997 & Supp. 2003).

## STANDARD AND SCOPE OF REVIEW

It is a fundamental rule of Texas jurisprudence that the State of Texas, its agencies, and its officers may not be sued without the consent of the legislature. *Texas Natural Res. Conservation Comm=n v. IT-Davey*, 74 S.W.3d 849, 853-54 (Tex. 2001); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). Thus, the State of Texas is immune from suit unless the State consents to being sued. *See Missouri Pac. R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex. 1970). In the absence of the State=s consent to suit, a trial court lacks subject-matter jurisdiction. *Texas Dep=t of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The lack of subject-matter jurisdiction is properly raised by a plea to the jurisdiction. *Id.*

The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In a suit against the State, the plaintiff must allege consent to suit either by reference to a statute or to express legislative permission. *Jones*, 8 S.W.3d at 638. Here, Bonham contends that her petition alleged claims against the Department within the Act=s limited waiver of sovereign immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (West 1997).

We review *de novo* the district court=s ruling on a plea to the jurisdiction. *See State Dep=t of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2001); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Unless a defendant pleads and proves that allegations in a plaintiff=s petition were fraudulently made, we take as true the facts pleaded in the petition to determine whether those facts support jurisdiction in the trial court. *Texas Ass=n of Bus.*, 852 S.W.2d at 446. If

2

necessary, we may review the entire record to determine if the trial court had jurisdiction. *Bland ISD v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000). As the Department has not asserted any fraudulent pleading, we accept Bonham=s factual allegations as true. If Bonham=s petition fails to allege jurisdictional facts, then her claims are subject to dismissal if it is impossible to amend her pleadings to confer jurisdiction. *Texas Ass=n of Bus.*, 852 S.W.2d at 446.

**BACKGROUND**

Bonham was incarcerated at the Ellen Halbert state jail facility (the Afacility@) in Burnet. Early one morning, after finishing her work detail of cleaning a men=s restroom at the facility, a guard approached her, pushed her into the restroom, and forced her to have sexual intercourse. The guard instructed Bonham to say nothing about the incident. After she reported the assault to facility employees, rather than providing her medical care and investigating her report, Bonham alleged that facility personnel directed her to not report the assault to the police and then disciplined her for lying. One week later, Bonham was examined by a physician who reported that Bonham had been forced to have or had had forcible intercourse. Bonham alleged that facility officials tried to coerce the physician into offering a different explanation for Bonham=s injuries. Bonham alleged that after she reported the incident to the Johnson County district attorney,[2] in further retaliation and in an attempt to conceal the incident, facility officials transferred her to another state jail facility. Although according to policy she should have been transferred to another substance abuse facility, she was sent to a higher security facility. When officials from

---

[2] It is unclear from the record why Bonham reported the incident to the Johnson County district attorney as the facility is located in Burnet County.

the Johnson County sheriff=s office and the Johnson County probation department attempted to locate Bonham, they were informed by facility employees that she had been moved to another state jail facility. The facility=s officials refused to disclose Bonham=s whereabouts until the district court issued a bench warrant which instructed the Department to return her to Johnson County.

Later, after Bonham returned to her home, the guard who assaulted her continued to intimidate and harass her. Bonham sued to recover damages she sustained as a result of the guard=s assault as well as damages related to the subsequent discipline, retaliation, and harassment. Among others, Bonham sued the Department pursuant to the Act alleging that the Department was liable based on the facility=s defective layout and a lack of integral safety components, that is, that the facility lacked adequate surveillance equipment, either of which constituted a condition or misuse of tangible property that proximately caused her damages. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2) (West 1997). She alleged that these conditions or misuses of property made it possible for the guard to perpetrate the sexual assault undetected by other employees, and, if the facility=s men=s restroom had been equipped with surveillance equipment, the assault could have been prevented. Further, Bonham alleged that the Department=s negligence in laying out the facility and the Department=s lack of adequate surveillance equipment prevented facility personnel from supervising Bonham while she was on work detail in the men=s restroom.

The Department filed a plea to the jurisdiction, asserting that Bonham=s petition failed to allege facts that would support a claim under section 101.021(2) of the Act and, therefore, sovereign immunity deprived the court of subject-matter jurisdiction over her claims against it for damages. Bonham

**4**

responded to the plea to the jurisdiction and concurrently filed a second amended petition. The Department

replied to Bonham=s response. The district court granted the plea to the jurisdiction, dismissed Bonham=s

claims against the Department, and severed Bonham=s claims against the other defendants into a new cause

thereby rendering the dismissal of Bonham=s claims against the Department final for purposes of appeal.[3]

## DISCUSSION

As an agency of the State, the Department is immune from suit and cannot be liable for

damages unless Bonham=s claims fall within the statutory waiver of sovereign immunity under the Act. *See*

*Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31 (Tex. 1983). Sovereign immunity is waived and suit

may be brought against a governmental unit for personal injury in three instances, Ause of publicly owned

automobiles, premises defects, and injuries arising out of conditions or use of property.@ *Texas Dep=t of*

*Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000) (quoting *Lowe v. Texas Tech Univ.*, 540 S.W.2d

297, 298 (Tex. 1976)); Tex. Civ. Prac. & Rem. Code Ann. ' 101.021. The supreme court has held that

when a personal injury claim is based upon a condition or use of property, the injury must have been

proximately caused by the condition or use of the property. *Dallas County Mental Health & Mental*

*Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). To be a proximate cause, the negligent

conduct must involve some condition or some use of the tangible property. *Salcedo*, 659 S.W.2d at 33.

While involvement of property is necessary, such a fact does not always lead to the conclusion that immunity

---

[3] Severed into the new cause are Bonham=s claims against the guard, in his official and individual capacities, the warden of the facility, a captain at the facility, and the executive director of the Department.

has been waived. *Bossley*, 968 S.W.2d at 342. The Act=s waiver of immunity does not extend to damages arising from an intentional tort or from governmental discretionary conduct. Tex. Civ. Prac. & Rem. Code Ann. ' 101.057(2) (West 1997).

Bonham contends that the district court erred in granting the plea to the jurisdiction because her second amended petition sufficiently alleged that a condition or use of tangible property proximately caused her injuries, and therefore under the Act the Department=s sovereign immunity was waived. Bonham contends that a proximate cause of her damages was the condition or use of tangible propertyCthe substandard, defective layout of the facility, and further that the facility lacked an integral safety component, surveillance equipment that would monitor the men=s restroom.

The Department responds that the true substance of Bonham=s claims was that the Department failed to protect her from the guard=s intentional assault, a claim that is expressly excluded from the Act=s waiver of sovereign immunity. *See id.* (waiver of immunity does not apply to claims for damages arising out of assault, battery or other intentional tort). The Department contends that Bonham=s claims were based on intervening intentional conduct along with the Department=s discretionary policy decisions for which there is no waiver of sovereign immunity. Additionally, the Department contends that the restroom only furnished the location that allowed the guard to carry out his intentional assault, that the layout did not proximately cause her damages, and Bonham=s claims against the Department, therefore, were not within the Act=s waiver of sovereign immunity. Further, the Department contends that any lack of surveillance equipment was a Anonuse@ of property, and not a missing integral safety component. Finally, the

**6**

Department contends the decision about whether to include surveillance equipment at the facility to monitor the men=s restroom was a discretionary policy decision for which immunity is not waived.

**Did defective layout constitute a condition or use under the Act?**

First, we address Bonham=s contention that the defect layout qualifies as a condition or use of property that proximately caused her injuries and for which sovereign immunity is waived. To provide guidance to courts faced with determining whether a condition or use of property is a proximate cause of damages, the supreme court has held that A[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible.@ *Bossley*, 968 S.W.2d at 343 (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995)). Although a room may be a part of the context and condition that made a personal injury possible, such a setting without more, cannot satisfy the requirement of proximate cause under the Act. *Scott v. Prairie View A&M Univ.*, 7 S.W.3d 717, 720 (Tex. App.CHouston [1st Dist.] 1999, pet. denied); *see also Hendrix v. Bexar County Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App.CSan Antonio 2000, pet. denied) (citing *San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 37 (Tex. App.CSan Antonio 1998, pet. denied)) (condition must be instrument or direct device causing plaintiff=s harm).

The Department argues that the facility=s layout was not a proximate cause of Bonham=s assault but only furnished the condition to make possible the intervening intentional acts of the guard, which were the proximate cause of Bonham=s damages. The Department contends that substantively, Bonham=s complaint against the Department is that the facility failed to supervise its employees and not that the use or condition of the state=s property, the layout of the facility, proximately caused her damages. Bonham

contends that there was no intervening cause, and that the layout of the facility proximately caused her damages.

Here, the guard=s sexual assault is the type of intervening intentional act contemplated and referred to in the caselaw as an example of when sovereign immunity is not waived. *See Scott*, 7 S.W.3d at 720; *see also Texas Dep=t of Mental Health & Mental Retardation v. Lee*, 38 S.W.3d 862, 867-68 (Tex. App.CFort Worth 2001, no pet.); *Hendrix*, 31 S.W.3d at 663; *Lamar Univ. v. Doe*, 971 S.W.2d 191, 196 (Tex. App.CBeaumont 1998, no pet.) (holding sexual assaults were intervening intentional acts that constituted proximate cause while use or condition of state property furnished only conditions for intentional act to occur). Although the layout of the facility was part of the context of the guard=s sexual assault on Bonham, it was, at most, a condition that made the guard=s intervening intentional act possible. We overrule Bonham=s contention that the facility=s layout constituted a use or condition that proximately caused her injuries and that her claim was within the Act=s waiver of sovereign immunity.

**Did lack of surveillance equipment constitute a condition or use under the Act?**

We next address Bonham=s contention that the lack of an integral safety component, surveillance equipment that would monitor the men=s restroom, was a use or condition of tangible property that proximately caused her injury and was a claim for which sovereign immunity was waived. Regarding this claim, the Department contends that the lack of surveillance equipment did not constitute a lack of an integral safety component, but was a claim of nonuse of tangible property, a claim for which sovereign immunity is not waived. The term Ause@ means Ato put or bring into action or service; to employ for or apply to a given purpose.@ *Marroquin v. Life Mgmt. Ctr.*, 927 S.W.2d 228, 230-31 (Tex. App.CEl Paso

**8**

1996, writ dism=d w.o.j.) (quoting *LeLeaux v. Hamshire-Fannett ISD*, 835 S.W.2d 49, 51 (Tex. 1992)). By contrast, the nonuse of property cannot support a claim under the Act. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (failure to provide medication was nonuse and did not constitute use of tangible property that caused death).

Waiver of immunity due to the lack of an integral safety component is Alimited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff=s injuries.@ *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996); *see also Overton Mem=l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (immunity waived when plaintiff alleged hospital provided hospital bed lacking integral safety component, bed rails, which led to injury); *Lowe*, 540 S.W.2d at 298 (immunity waived when plaintiff alleged university provided football uniform lacking integral safety component, proper protective knee equipment, which led to injury). In these cases, state property actually provided to a plaintiff lacked some integral safety component. That is not so in the situation presented here.

The Department also relies upon *Marroquin v. Life Managment Center*, in which the plaintiff alleged that the lack of locked doors, alarms and video surveillance was a lack of an integral safety component and constituted a condition of the state=s property that proximately caused a mental patient=s injuries related to sexual activity with another patient. 927 S.W.2d at 232. The *Marroquin* court held that the allegation of unlocked doors and the lack of alarms and video surveillance did not involve missing integral safety components, but were claims of nonuse of certain items. Further, the *Marroquin* court ruled

**9**

that the claims involved discretionary governmental policy decisions for which sovereign immunity is not waived.  *Id.*

Like *Marroquin*, in this instance, Bonham=s claim that the lack of surveillance equipment in the men=s restroom constituted a missing integral safety component was an allegation of a nonuse of surveillance equipment.  Additionally, we are not persuaded by Bonham=s contention that surveillance equipment is an integral safety component of a men=s restroom.  Further, the Department=s decision about whether or where to locate surveillance equipment within the facility would be a discretionary governmental policy decision for which sovereign immunity is not waived.

We overrule Bonham=s contention that the lack of surveillance equipment constituted a claim of a lack of an integral safety component, the lack of which proximately caused her damages, and was a claim for which sovereign immunity was waived under the Act.

**Is *Michael v. Travis County Housing Authority* dispositive?**

Throughout her brief, Bonham contends that *Michael v. Travis County Housing Authority* is dispositive of this case.  995 S.W.2d 909 (Tex. App.CAustin 1999, no pet.).  In *Michael*, the plaintiff sued the Housing Authority for personal injuries sustained by her child when the child was attacked by two pit bull dogs.  The dogs were owned by a resident of the Housing Authority=s development.  Due to the dogs= vicious nature, the Housing Authority built a fence around the dogs= owner=s yard specifically to keep the dogs in the yard and to protect passers-by from the dogs.  *Id.* at 914.  The dogs escaped through holes in the fence and attacked the plaintiff=s eight-year-old daughter on the nearby sidewalk.  *Id.* at 911. The *Michael* court concluded that an allegation that the provided fence had large holes, when the purpose

**10**

of the fence was to restrain the vicious dogs, was a condition of property that was not too attenuated from the girl's injuries and was a claim within the statutory waiver of sovereign immunity. *Id. Compare with Koehler*, 981 S.W.2d at 37 (patient escaped mental hospital, accompanied by male acquaintance, through hole in fence surrounding hospital and acquaintance later sexually assaulted patient at boarding house; holding intervening criminal act of acquaintance attenuated causal nexus between hole in hospital's fence and injury).

We find the situation in *Michael* distinguishable from the facts before us. In *Michael*, the fence lacked integral safety components; it had large holes, which were directly linked to the dogs' escape, the dogs' attack of the girl on the adjacent sidewalk, and the injuries she suffered in the attack. Unlike the defective fence in *Michael*, Bonham's claims do not include any failure of any essential purpose or use of the facility's men's restroom. Here, the men's restroom provided no more than the condition for the guard's intervening intentional acts, which proximately caused Bonham's injuries. We overrule Bonham's contention that the *Michael* opinion is dispositive of this case.

**CONCLUSION**

"By its very nature, the limited waiver of sovereign immunity in the [Act] will leave governments immune from many claims—including, as here, claims involving appalling facts." *Hendrix*, 31 S.W.3d at 663. After reviewing Bonham's allegations, taking them as true, and construing them in her favor, we conclude that the petition failed to present a claim against the Department for which sovereign immunity was waived by the Act. The guard's intervening intentional acts attenuated the causal nexus between the Department's property and Bonham's injuries so that Bonham's claims against the Department

**11**

are not within the scope of the Act≈s waiver of sovereign immunity. Further, any decisions about whether or where surveillance equipment would be placed at the facility are discretionary decisions for which sovereign immunity is not waived. Accordingly, the district court was without subject-matter jurisdiction over Bonham≈s claims against the Department. We affirm the district court≈s judgment granting the Department≈s plea to the jurisdiction and dismissing Bonham≈s claims against the Department.

_____

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed:   March 6, 2003