COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 BERNARDO
 TARIN-GODOY, M.D.,
  
                             Appellant,
  
 v.
  
 CRISTINA
 CRUZ, M.D.,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-03-00120-CV
  
 Appeal from the
  
 County Court at Law No. 5
  
 of El Paso County, Texas
  
 (TC#98-3886)
 
 




 

MEMORANDUM
OPINION

Bernardo Tarin-Godoy, M.D., appeals
the trial court=s denial of his motion for summary judgment.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Tarin is the medical director of Life
Management Center for MH/MR Services (The Center), which operates the El Paso
Psychiatric Center (EPPC).  Cristina
Cruz, M.D., had courtesy staff status at EPPC. 
In August 1998, Tarin suspended Cruz pending an investigation into
whether she abandoned a patient.  The
suspension was lifted the following month, and Cruz was placed on six months= probation.








Thereafter, Cruz brought this suit
against Tarin, The Center, and two other officials.   She sought a declaratory judgment that her
suspension and probation violated EPPC=s bylaws and various federal and
state statutes and she requested that the references to the suspension and
probation be removed from her record.

In addition to the declaratory
judgment claim, Cruz pleaded three tort claims--defamation, invasion of
privacy, and intentional infliction of emotional distress.  In the defamation claim, she alleged that
Tarin and other Center officials slandered her by stating that she had
abandoned a patient and that Tarin also slandered her by stating that she
needed to be escorted out of EPPC when he suspended her.  In the invasion of privacy claim, she alleged
that before her suspension, in April 1998, The Center and Center officials
released her confidential personnel record to third parties.  In the intentional infliction of emotional
distress claim, she alleged that the defendants caused her severe emotional distress
by stating that she had abandoned a patient, ordering her removed from EPPC,
and releasing her confidential personnel record.

Tarin filed a motion for summary
judgment, arguing that Cruz=s defamation and intentional infliction of emotional distress
claims are barred by sovereign and official immunity.  The trial court denied the motion, and this
appeal followed.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5) (Vernon Supp. 2004).

STANDARD OF REVIEW








In reviewing the denial of a summary
judgment, we apply the same standard that we apply when a summary judgment has
been granted.  El Paso County v.
Ontiveros, 36 S.W.3d 711, 714-15 (Tex. App.--El Paso 2001, no pet.).  The movant has the burden of showing that
there is no genuine issue of material fact and that he is entitled to judgment
as a matter of law.  Id. at
715.  In deciding whether there is a
disputed material fact, we take as true all evidence favorable to the nonmovant
and indulge every reasonable inference in her favor.  Id.

SOVEREIGN IMMUNITY

Governmental employees who are sued
in their official capacity may raise the defense of sovereign immunity.  Battin v. Samaniego, 23 S.W.3d 183,
186 (Tex. App.--El Paso 2000, pet. denied). 
Sovereign immunity is an affirmative defense.  Ontiveros, 36 S.W.3d at 715.  Therefore, to prevail on this defense at the
summary judgment stage, Tarin must provide evidence that The Center is a
governmental unit that is entitled to sovereign immunity.  Id.; Brooks v. Ctr. for Healthcare
Servs., 981 S.W.2d 279, 281, 283-84 (Tex. App.--San Antonio 1998, no pet.).








To establish his entitlement to
sovereign immunity, Tarin relies on Marroquin v. Life Management Center for
MH/MR Services, 927 S.W.2d 228 (Tex. App.--El Paso 1996, writ dism=d w.o.j.).  In Marroquin, the plaintiff appealed a
summary judgment granted in The Center=s favor.  927 S.W.2d at 229.  We stated that ALMC is a governmental unit as defined
by Tex. Civ. Prac. & Rem. Code Ann.
' 101.001 . . . .@ 
Id.  But we also stated, ABoth parties agree that LMC is a unit
of government entitled to assert the doctrine of sovereign immunity.@ 
Id. at 230.  Thus, LMC=s status as a governmental unit was
not an issue in that case.  In this case,
unlike in Marroquin, the plaintiff does not agree that The Center is a
governmental unit entitled to sovereign immunity.  Therefore, Marroquin is not
controlling.

Tarin also relies on his own
affidavit and an affidavit by Jonathan Lucas. 
Tarin=s affidavit states that he is Athe Medical Director of Life
Management Center for MH/MR Services (hereinafter >LMC=)@ and that ALMC was operating or in charge of the
El Paso Psychiatric Center@ when the events giving rise to this suit occurred.  (Emphasis added.)

Lucas=s affidavit states:

I am the
Interim Chief Executive Officer of Life Management Center for MH/MR Services.  Life Management Center is a governmental
entity.  It was created by an interlocal
agreement between and among other governmental entities.  A true and correct copy of the interlocal
agreement establishing Life Management Center is attached to this
instrument.   (Emphasis added.)

 

The attached interlocal agreement between the City of El
Paso, the County of El Paso, and ALife Management Center@ notes that the City and County
previously established the El Paso Center for Mental Health and Mental
Retardation, which later changed its name to ALife Management Center.@ 
The agreement provides, pursuant to statutory authority, that A[t]he City and the County hereby
mutually establish a community mental health and mental retardation center,
which will provide mental health and mental retardation services, to be known
as Life Management Center.@








The statutory authority for
establishing a community mental health and mental retardation center is
currently found in Chapter 534 of the Health and Safety Code, which provides
that such a center is a governmental unit as defined by the Texas Tort Claims
Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.002 (Vernon 1997); Tex. Health & Safety Code Ann. ' 534.001(c)(1) (Vernon 2003).

The record thus contains
uncontroverted evidence that EPPC was operated by ALife Management Center for MH/MR
Services@ and that ALife Management Center@ is a governmental unit that is
entitled to sovereign immunity.  But
there is no summary judgment evidence that ALife Management Center for MH/MR
Services@ and ALife Management Center@ are one and the same.  Given our standard of review at the summary
judgment stage, we cannot infer that the two entities are one and the
same.  Because Tarin thus did not prove
that The Center is a governmental unit that is entitled to sovereign immunity,
the trial court did not err in denying his motion for summary judgment based on
sovereign immunity.

OFFICIAL IMMUNITY

Governmental employees are entitled
to official immunity for acts that are: 
(1) discretionary; (2) performed in good faith; and (3) within the scope
of their official duties.  City of
Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  Like sovereign immunity, official immunity is
an affirmative defense.  Id.; Ontiveros,
36 S.W.3d at 715. Therefore, Tarin had the burden of establishing all the
elements of official immunity.  Ontiveros,
36 S.W.3d at 715; City of El Paso v. Higginbotham, 993 S.W.2d 819, 822
(Tex. App.--El Paso 1999, no pet.).








To establish good faith, the summary
judgment evidence must show that a reasonably prudent official, under the same
or similar circumstances, could have believed that the action taken was
justified in light of a clear risk of harm. 
Chambers, 883 S.W.2d at 656; Ontiveros, 36 S.W.3d at 715; Higginbotham,
993 S.W.2d at 825.  The official does not
have to prove either that it would have been unreasonable to take a different
course of action or that all reasonably prudent officials would have acted as
he did.  Chambers, 883 S.W.2d at
657; Higginbotham, 993 S.W.2d at 825. 
To evaluate whether an official has established good faith, we consider
whether a reasonable official could have believed that the challenged conduct
was lawful in light of clearly established law and the information possessed by
the official at the time of the conduct. 
Chambers, 883 S.W.2d at 656. 
Thus, the good faith standard protects all but the plainly incompetent
or those who knowingly violate the law.  Id.;
Colbert v. Hollis, 102 S.W.3d 445, 448 (Tex. App.--Dallas 2003, no
pet.).

If the government official produces
evidence to show that he met the good faith standard, the plaintiff faces an
elevated standard of proof to defeat summary judgment.  Chambers, 883 S.W.2d at 656.  The plaintiff must do more than show that a
reasonably prudent official could have taken a different action; she must show
that no reasonable person in the official=s position could have thought the
facts were such that they justified his acts. 
Chambers, 883 S.W.2d at 657.








Tarin=s Summary Judgment Proof

With these principles in mind, we
will examine Tarin=s summary judgment proof on the issue of good faith.  We will also keep in mind that the only
claims at issue in this appeal are Cruz=s claims of defamation and
intentional infliction of emotional distress. 
Thus, we must evaluate Tarin=s proof to determine whether he
satisfied the good-faith standard with regard to his statements that Cruz had
abandoned her patient and his decision to have Cruz escorted out of EPPC.

Tarin=s summary judgment proof consisted of
his two affidavits and Lucas=s affidavit.  Lucas=s affidavit does not touch on the
good faith issue.

Tarin=s First Affidavit

In his first affidavit, Tarin states
that he has been the medical director of The Center since approximately June
1998.  As medical director, he is a
member of its medical peer review committee. 
That committee Aevaluated the merits of complaints levied against Dr. Cruz
regarding patient care and made determinations and recommendations regarding
those complaints.@  Tarin suspended Cruz
in accordance with The Center=s bylaws, pending an investigation of her alleged abandonment
of a patient.  The committee subsequently
placed Cruz on probationary status without affecting her privileges.








Tarin=s Second Affidavit

In his second affidavit, Tarin
states:

In
August, 1998, a series of events or circumstances . . . created concerns as to
whether or not Dr. Cruz had abandoned a particular patient for a number of days
between August 1-20, 1998.  Specifically,
there were concerns whether Dr. Cruz had failed to attend to her patient during
all or a portion of the time between August 1-20, 1998, and whether or not Dr.
Cruz had failed to secure a Abackup@ physician to attend to the patient during her
absence.

 

Tarin further states that the Aconcerns of abandonment were brought
to [his] attention@ by other physicians. 
He suspended Cruz on August 20, 1998 Abecause of these concerns of
abandonment, and based on the conversations with physicians who ultimately
attended to the patient in Dr. Cruz=s absence, and based on a review of
the particular patient=s medical records . . . .@

After the suspension, Aan investigation was conducted,@ and the medical staff executive
committee held a special meeting to conduct a peer review of the abandonment
allegation.  AThe results of the investigation were
reported at the special meeting.@ 
Then,   A[a]s a result of the peer review
meeting, a decision was made to recommend that . . . Cruz retain her
privileges, but that she be placed on probation for a six-month period.@   
On September 4, 1998, Tarin informed Cruz that her suspension was
lifted, effective at 6 p.m. on the previous day.  Cruz was later informed of the terms of her
probation.

We will quote the last paragraphs of
the affidavit in full:








At all
times in question, my actions, including suspending Dr. Cruz and investigating
the complaint of abandonment, were done while acting within the course and
scope of my employment as Medical Director of LMC.  I took such action (suspended Dr. Cruz and
conducted an investigation) because, in my judgment, it was in the best
interest of patient health and safety and the continued operation of LMC, since
there had been an apparent violation of the bylaws, rules and regulations and
policies of LMC or the medical staff. 
More specifically, based on information before me, I had cause to
question the care or treatment of one of Dr. Cruz=s
patients and the management of the patient=s
case.  I also had cause to question
whether or not there had been violations of the bylaws or policies of LMC,
and/or the bylaws, rules and regulations of the medical staff relating to medical
activity.  I also had cause to question
certain actions or omissions of Dr. Cruz which could be detrimental to the
health or welfare of the patient.  I, in
conjunction with the Medical Staff Executive Committee, suspended Dr. Cruz=s privileges, pending an investigation, based on the
information obtained and my judgment that there may have been patient
abandonment, and that a suspension was necessary for the protection of LMC and
EPPC patients.

 

All
statements made and questions asked by me occurred within the context and
confines of the suspension and investigation, and were made in my best judgment
as to what was appropriate based on my personal observations, review of the
medical records, and on reports received from other doctors or medical
personnel.  

 

I have
been a medical director for 13 years. 
From my experience as a Medical Director, I have become aware of how
medical directors in general would have proceeded under the same or similar circumstances.  At all times in question, I conducted myself
as a reasonable, prudent medical director in charge of a psychiatric medical
facility such as LMC.  Under the same or
similar circumstances, a reasonable and prudent medical director could have believed
the actions taken by me, and the statements made and questions asked by me,
were lawful, reasonable and prudent based on the information possessed at the
time.  Any and all statements, questions
or actions made by me were discretionary functions, were performed in good
faith, and were within my scope and authority as Medical Director of LMC.

 








Analysis

In her summary judgment response,
Cruz argued that Tarin=s affidavits are conclusory and are not clear, positive,
direct, credible, and free from contradictions and inconsistencies.  We agree. 
A summary judgment may not be based on affidavits of interested or
expert witnesses unless the witnesses= testimony is Aclear, positive and direct, otherwise
credible and free from contradictions and inconsistences, and could have been
readily controverted.@  Tex. R. Civ. P. 166a(c); Haynes v.
City of Beaumont, 35 S.W.3d 166, 178 (Tex. App.--Texarkana 2000, no
pet.).  Moreover, conclusory statements
in affidavits are not competent evidence to support a summary judgment.  Haynes, 35 S.W.3d at 178.  A conclusory statement is one that does not
provide the underlying facts to support the conclusion.  Id.; see also Hess v. McLean
Feedyard, Inc., 59 S.W.3d 679, 686 (Tex. App.--Amarillo 2000, pet. denied)
(stating that when an expert=s affidavit fails to provide supporting facts, his bare
conclusion is not evidence).








Tarin=s affidavits are replete with broad,
general, and conclusory statements with no specifics or factual detail.  Examples are: 
Aa series of events or circumstances .
. . created concerns;@ Aan investigation was conducted;@ AI had cause to question the care or
treatment of one of Dr. Cruz=s patients and the management of the patient=s case;@ AI . . . had cause to question certain
actions or omissions of Dr. Cruz which could be detrimental to the health or
welfare of the patient;@ and AI . . . suspended Dr. Cruz=s privileges, pending an
investigation, based on the information obtained and my judgment that there may
have been patient abandonment, and that a suspension was necessary for the
protection of LMC and EPPC patients.@ 
Furthermore, Tarin states that his investigation uncovered possible
violations of LMC=s bylaws, policies, rules, and regulations, but does not
identify the provisions that were violated. 
These statements are insufficient to establish good faith.  Cf. Haynes, 35 S.W.3d at 178
(defendant=s statements that she decided to fire
plaintiff Abecause of her poor and unacceptable
behavior@ and that she based her decision on
another employee=s recommendation and her own observations of plaintiff were
not readily controvertible).

Although the last paragraph of the
second affidavit contains language that tracks 
the good-faith standard, such language is conclusory and insufficient to
establish good faith unless substantiated by supporting facts.  See Wadewitz v. Montgomery, 951 S.W.2d
464, 466-67 (Tex. 1997); Vela v. Rocha, 52 S.W.3d 398, 405 (Tex.
App.--Corpus Christi 2001, no pet.).  The
preceding paragraph, in which Tarin states that he used his Abest judgment,@ is likewise conclusory.  See Perry v. Greanias, 95 S.W.3d 683,
697 n.5 (Tex. App.--Houston [1st Dist.] 2002, pet. denied).








We therefore conclude that Tarin=s summary judgment proof failed to
establish good faith as a matter of law. 
Thus, the burden never shifted to Cruz to present controverting
proof.  See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Colbert, 102
S.W.3d at 449; Harley-Davidson Motor Co. v. Young, 720 S.W.2d 211, 213
(Tex. App.--Houston [14th Dist.] 1986, no writ).  Further, for the reasons explained below,
even if the burden did shift to Cruz, we conclude that her proof created a fact
question on good faith.  Cruz=s summary judgment proof included
Tarin=s deposition and her own affidavit.

Cruz=s Summary Judgment Proof

Tarin=s Deposition

Tarin testified that he was on
vacation during the first part of August 1998. 
On August 20, about a week after he returned from vacation, Dr. Wilcox
informed him that Cruz had left on vacation without securing a backup physician
to continue the patient=s care.  The term Asecuring backup@ means having an order entered into
the record indicating the physician who is going to continue a patient=s care while the patient=s physician is unavailable.  To secure a backup, a physician must first
find another physician to agree to be backup and then leave an order in the
chart reflecting the backup physician=s name.

Tarin investigated the matter by
talking to Dr. Wilcox and Dr. Ramirez. 
He did not speak with the patient or Cruz.  Tarin also reviewed the patient=s medical record, including the
physician=s notes, the progress notes, the
nurses= notes, the physician=s orders, documents filed regarding
the involuntary commitment of the patient, and some of the patient=s psychological tests and
assessments.








The patient=s record reflected that Ramirez
covered for Cruz between August 1 and August 3. 
But Ramirez told Tarin that he was Aforced@ to cover for Cruz because Cruz
left.  Tarin testified that Wilcox also
covered for Cruz Aunwillingly.@  The record revealed
that Cruz was in court with the patient on August 17 and that she participated
in a treatment team meeting on August 19. 
But according to Tarin, treatment must be done on a one-to-one basis and
must be reflected in a progress note in the records.  There was no such progress note for August
19.  Tarin acknowledged that it was
permissible to write a progress note a day after the physician provides
treatment to a patient.

When Tarin informed Cruz of her
suspension, only he and Cruz were present.  
Although he did not give her an opportunity to see the patient, he did
not remember her asking to see the patient or his record.  He also did not remember asking anyone to
escort her out of the unit, and he was not aware that she was escorted
out.  He did not allow her to access the
patient=s medical record because he was
concerned that she might attempt to alter the record.  He later informed the review committee that
Cruz abandoned her patient from August 1 to August 19.  But Tarin acknowledged that the patient=s medical record reflected that Cruz
saw the patient on August 1.

Tarin testified that he suspended
Cruz because he was concerned with patient care and safety.  He explained that if a physician abandons a
patient without securing a backup or informing the patient, the patient=s treatment will suffer.








A substantial part of Tarin=s deposition was devoted to the
question of whether the patient was competent and whether he or his parents
could terminate the physician-patient relationship between the patient and
Cruz.  Tarin was Anot sure@ if the patient had a guardian, but
he believed that the patient did not and that he was consenting for his own
treatment.  Tarin recalled a note by Dr.
Cruz in the patient=s records, stating that the patient had Aborderline intellectual functioning,@ which means that he was not mentally
retarded.  Tarin remembered another note
in the record stating that the patient=s father had terminated the
physician-patient relationship.  But
Tarin believed that the patient was an adult and was not declared
incompetent:  AAs far as I understand, he did not
have a guardian, and so the relationship can only be terminated by the patient.@ 
His parents could not terminate the relationship unless the patient had
been declared incompetent in a court of law.

Cruz=s Affidavit[1]

In her affidavit, Cruz states that
she treated the patient through August 2. 
On that date:

I was
advised by the nursing staff . . . that the father of the patient had instructed
the staff that my services were no longer required.  I asked the staff to document the Father=s wishes and asked that Dr. Arturo Ramirez . . . be
notified.  I later called the Center to
confirm that another physician would be caring for the patient and learned that
Dr. James Wilcox would be caring for the patient.

 








Cruz also states that the patient is Abelow the 1st percentile in
functional domains [and that] [t]his means that 99% of the population processes
data better than the patient.@   The patient=s mental age using Bender Gestalt was
less than seven, even though his chronological age was over eighteen.  From these facts, Cruz concludes, based on
reasonable medical probability, that the patient is retarded and not capable of
giving informed consent.  On August 17,
she and the patient attended a court hearing at which Wilcox testified that the
patient was incompetent.  On the same
day, Wilcox asked Cruz to resume the patient=s care, and she agreed to do so.  The court appointed a guardian for the
patient.  On August 18, Cruz attended a
treatment care conference with the patient and his parents.  On August 19, she saw the patient and made a
notation in his medical record.   On
August 20, Tarin advised her that her privileges were being immediately
suspended.    Tarin prevented her from
seeing the patient or his medical record. 
He asked Aa staff member@ to escort her from the facility and
the staff member did so.  She was not
interviewed or permitted to participate in the investigation into the alleged
abandonment.

Cruz was not aware of any problems in
getting another physician to take over the patient=s care.  The patient=s medical record shows that the
patient=s condition did not change between
August 1 and August 20.  Cruz concludes, AI did not abandon the patient in
question as the patient-physician relationship had been terminated by the
patient=s father.@

Analysis








Summary judgment is inappropriate if the
material facts relied upon to support good faith are in dispute.  See Kistner v. Pfannstiel, 107 S.W.3d
7, 12 (Tex. App.--San Antonio 2002, no pet.); Victory v. Bills, 897
S.W.2d 506, 509 (Tex. App.--El Paso 1995, no writ).  Cruz=s summary judgment evidence reveals a
dispute regarding whether Tarin instructed the staff to escort Cruz out of
EPPC.  Whereas Tarin testified that he
did not remember asking anyone to escort Cruz out and that he was not aware
that she was escorted out, Cruz testified that Tarin asked a staff member to
escort her out and the staff member did so. 
This dispute is material because Cruz=s claims for defamation and
intentional infliction of emotional distress are based in part on the
allegation that Tarin instructed the staff to escort her out.  There is no evidence regarding the
reasonableness of this instruction.  This
deficiency is sufficient to support the trial court=s denial of summary judgment.[2]

CONCLUSION

For the reasons stated herein, Tarin=s issue on appeal is overruled, and
the trial court=s order denying Tarin=s motion for summary judgment is
affirmed.

 

SUSAN
LARSEN, Justice

December 11, 2003

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 











[1]Because
Tarin did not file any objections to Cruz=s
affidavit, any formal defects in the affidavit are waived.  See Tex.
R. Civ. P. 166a(f).





[2]Cruz=s summary judgment evidence also
reveals factual disputes regarding whether the patient was retarded and whether
he was capable of consenting for his own treatment, whether Cruz secured a
backup, whether she had a physician-patient relationship with the patient, and
whether she treated the patient during part of the time that she was alleged to
have abandoned him.