**CITY OF DALLAS, Appellant**

**v.**

**Keisha HEARD, individually and as next friend of Rivers Heard, Bernard Hanyard, and Kiara Thomas, and Cheryl Reichert, individually and as next friend of Annabelle Reichert, Logan Reichert, and Tyler Reichert, Appellees.**

**No. 05–07–00762–CV.**

Court of Appeals of Texas, Dallas.

April 22, 2008.

Patricia M. Medrano, Barbara E. Rosenberg, City of Dallas Atty's Office, Dallas, for Appellant.

Ray Jackson, The Jackson Law Firm, Ben C. Martin, Law Offices of Ben C. Martin, L.L.P., Dallas, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

Appellees sued the City of Dallas for injuries they sustained when a gorilla escaped its outdoor exhibit at the Dallas zoo and attacked them. The City filed a plea to the jurisdiction, arguing that governmental immunity barred appellees' claims. The trial court denied the City's plea to the jurisdiction. We affirm in part and reverse and remand in part.

### BACKGROUND

On March 18, 2004, Keisha Heard took her two minor sons and her niece to the Dallas zoo. Cheryl Reichert took her children to the zoo that same day. That afternoon, an adolescent western lowland gorilla escaped its outdoor exhibit and attacked Heard and one of her sons as they walked through the zoo. At some point, the gorilla entered the aviary where it encountered Reichert and her children. Reichert pushed her children out of the aviary through the glass-enclosed passageway doors,[1] but the gorilla pushed through the door before Reichert was able to exit. Appellees alleged that the aviary passageway doors "failed to open" when Reichert tried to escape. The gorilla attacked Reichert and threw her against the glass enclosure as her children watched. Eventually, one of the doors opened and Reichert fled to safety. In the meantime, zoo employees worked to prepare tranquilizer guns to sedate and recapture the gorilla. This required the employees to reconstitute the tranquilizer from a freeze-dried state. Before they were able to use the tranquilizer, members of a Dallas SWAT team shot and killed the gorilla.

Appellees sued the City under the theories of premises defects, condition or use of tangible personal property, and strict liability for possessing a wild animal. The City filed a plea to the jurisdiction arguing that governmental immunity bars appellees' claims. The trial court denied the City's plea to the jurisdiction, and the City appeals.

### PLEA TO THE JURISDICTION

A party may challenge the trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). Whether the trial court has subject matter jurisdiction is a question of law, which we review de novo. *Id.* at 226. When the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties when it is necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c). *Id.* at 228. The plaintiff has the burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *Id.* at 226. The governmental unit then has the burden to assert and support its contention, with evidence, that the trial court lacks subject matter jurisdiction. *Id.* at 228. If it does so, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id.* at 228.

In conducting our review, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.* at 226–27. We consider the pleadings and the evidence pertinent to the jurisdictional inquiry. *Id.; City of Dallas v. First Trade Union Savings Bank*, 133 S.W.3d 680, 686 (Tex.App.-Dal-

---

1. The City stated that the aviary has two sets of doors and that zoo patrons push one door open to enter and push another door open at the other end to exit.

las 2003, pet. denied). If the evidence creates a fact issue concerning jurisdiction, the plea to the jurisdiction must be denied. *Miranda*, 133 S.W.3d at 227–28. If the evidence is undisputed or fails to raise a fact issue concerning jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard "protect[s] the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000)).

 Additionally, our jurisdiction is limited to reviewing the grant or denial of the plea to the jurisdiction that was filed. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2007); *First Trade Union Sav. Bank*, 133 S.W.3d at 686–87; *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.). We do not have jurisdiction to consider grounds outside those raised in the plea to the jurisdiction. *First Trade Union Sav. Bank*, 133 S.W.3d at 687; *Davies*, 158 S.W.3d at 61.

### GOVERNMENTAL IMMUNITY

 Sovereign immunity deprives a trial court of subject matter jurisdiction over lawsuits against the state unless the state consents to suit. *Miranda*, 133 S.W.3d at 224. Governmental immunity operates like sovereign immunity and affords similar protections to governmental subdivisions, including cities. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001(3)(B), .0215 (Vernon 2005); *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004).

 The Texas Tort Claims Act (TTCA) creates a waiver of governmental immunity for personal injury or death caused by a condition or use of tangible personal property or real property if a private citizen would be liable under Texas law. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021(2), .022, .025 (Vernon 2005 & Supp.2007). If a claimant alleges a premises defect and paid for use of the premises, the governmental unit owes the claimant the duty a private person owes an invitee on private property. *See id.* § 101.022; *Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974)); *Univ. of Tex. Med. Branch at Galveston v. Davidson*, 882 S.W.2d 83, 85 (Tex.App.-Houston [14th Dist.] 1994, no pet.). The duty a private landowner owes an invitee is to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of the premises of which the owner is or reasonably should be aware. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000); *Davidson*, 882 S.W.2d at 85. If a claim alleges a condition or use of tangible personal property, the plaintiff must allege that the property did more than merely furnish the condition that makes the injury possible—the plaintiff must allege that the property was a direct factor in causing the injuries. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). And allegations of failure to use or non-use of property are not actionable under the TTCA. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587–88 (Tex.2001) (distinguishing claims involving failure to use, or non-use of property, which do not waive sovereign immunity, from claims involving condition or use of tangible personal property which do effect waiver).

### A. Premises Defects

The City argues that appellees did not show a waiver of its governmental immunity for claims of premises defects because (1) their pleadings allege conduct that falls within the discretionary function exception to the limited waiver of immunity; (2)

appellees did not plead gross negligence as required under the recreational use statute;[2] and (3) appellees did not show that any alleged premises defects were the proximate cause of their injuries.[3]

Initially, appellees contend that the City did not argue that the recreational use statute applies to this case in its plea to the jurisdiction and may not raise it for the first time on appeal. In response, the City argues that the recreational use statute is an element of subject matter jurisdiction and may be raised at any time. We agree with appellees.

Although subject matter jurisdiction may be raised for the first time on appeal, our jurisdiction in an interlocutory appeal is only to review the trial court's ruling on the plea to the jurisdiction filed below. *See First Trade Union Sav. Bank,* 133 S.W.3d at 687. We have no jurisdiction to consider issues on appeal that are outside the plea to the jurisdiction which was filed. *See id.* at 686–87; *Davies,* 158 S.W.3d at 61. Consequently, we limit our analysis to the order denying the plea that the City filed.

### 1. Appellees' Pleadings

Appellees alleged that the City did not adequately provide and maintain a safe gorilla habitat because the City did not build the habitat wall to the proper height, provide a roof over the habitat, trim trees next to the outdoor gorilla exhibit, maintain speed bumps to keep the gorilla from accelerating speed to climb the wall, provide an alarm system, and maintain functioning surveillance cameras. Appellees alleged that the City failed to immediately become aware of the gorilla's escape because it failed to properly monitor the habitat. According to appellees, the City failed to properly monitor the habitat because two of the surveillance cameras in that portion of the gorilla exhibit were not working. Appellees contended that the City's failure to maintain the cameras in working order also constituted the failure to provide an integral safety component. Additionally, appellees alleged that the doors to the aviary passageway were premises defects because they would not open when Reichert tried to escape, trapping her in the glass enclosure with the gorilla.[4] They contended that the City failed to provide proper maintenance of the aviary doors. Appellees alleged that these conditions of real property allowed the gorilla to escape and injure them.

---

2. Chapter 75 of the Texas Civil Practice and Remedies Code, commonly referred to as the recreational use statute, further modifies a governmental unit's liability for certain claims under the TTCA by reducing the standard of care the governmental unit owes a claimant to that owed a trespasser. TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.002(c)-(e) (Vernon Supp. 2007); *Miranda,* 133 S.W.3d at 225 (recreational use statute applies to premises defect claims); *Kopplin v. City of Garland,* 869 S.W.2d 433, 440–41 (Tex.App.-Dallas 1993, writ denied) (recreational use statute applies to claims alleging use of tangible personal property). The duty owed a trespasser is not to injure the trespasser willfully, wantonly, or through gross negligence. *Miranda,* 133 S.W.3d at 225. When the recreational use statute applies, a governmental unit waives

immunity under that statute and the TTCA only if it is grossly negligent. *Id.*

3. The City argues on appeal that none of the premises defects caused appellees' injuries. We address only the causation arguments that the City raised below. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8); *First Trade Union Sav. Bank,* 133 S.W.3d at 686–87; *Davies,* 158 S.W.3d at 61.

4. The City argues on appeal that appellees are attempting to recast their claims for premises liability as claims for condition or use of personal property. However, appellees abandoned their argument that these items are personal property and argue that the cameras and doors are premises defects.

They alleged that the City knew or reasonably should have known that these conditions existed and failed to adequately warn appellees of these dangerous conditions.

## 2. The City's Plea to the Jurisdiction

The City argued in its plea to the jurisdiction that appellees' claims about the height of the habitat wall and the lack of a roof and speed bumps are claims of a defective design. It contended that because no statute or ordinance mandates the height of the wall or that a gorilla habitat have a roof or speed bumps, those design decisions are discretionary decisions for which immunity is not waived. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 2005). It argued that the habitat had been used for fifteen years without an escape, and that there was no evidence the City knew or should have known it was possible for a gorilla to escape. The City also argued that appellees' complaint about the non-working surveillance cameras is really a complaint about the non-use of property and is not actionable. *See Miller*, 51 S.W.3d at 587–88. The City contended that the lack of surveillance equipment is not the lack of an integral safety component, and, even if the cameras had been operational, there was no evidence that the City could have taken any action to prevent the harm to appellees. The City also argued that the aviary doors, even if defective, only made appellees' injuries possible and did not cause those injuries.[5]

### 3. Analysis

#### a. Habitat Wall

Appellees alleged that the design of the gorilla habitat required the habitat wall to be twelve feet high but that, as constructed, it was only eleven-feet-two-inches high in places. And they alleged that the City knew about this defect and the gorilla's attempt to scale the wall. They alleged, and offered evidence to show, that the gorilla "expressed aggression in the form of displays and object throwing," especially at the aviary keepers and any other workers along the south side of the habitat that was unfrequented by visitors. Some employees reported that the gorilla "would charge at them" and "hurl" itself against the habitat wall. Those employees said the gorilla "could reach quite high up the wall."

In response to these allegations, the City argued that the design of the habitat wall was a discretionary design decision for which immunity is not waived. We construe appellees' pleadings, however, as complaining that the wall was not built according to the design, not a complaint about the design itself. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657–58 (Tex.2007) (governmental unit immune from suit for design of public works but not for their maintenance); *Perez v. City of Dallas*, 180 S.W.3d 906, 911 (Tex.App.-Dallas 2005, no pet.) (immunity waived if injuries caused by negligent implementation of policy).

We conclude that appellees' factual allegations relating to the habitat wall are sufficient to allege a premises defect. *See Miranda*, 133 S.W.3d at 230; *see generally Michael v. Travis County Housing Auth.*, 995 S.W.2d 909 (Tex.App.-Austin 1999, no pet.) (allegation that pit bulls escaped

5. On appeal, the City also argues that appellees' allegations of the lack of an alarm system are allegations of non-use of an alarm system and are not actionable. However, the City's plea to the jurisdiction did not raise this issue below. It also did not raise, and the

City does not address on appeal, appellees' claim of a premises defect for the City's alleged failure to maintain the trees near the habitat. These issues are not before us. *See First Trade Union Sav. Bank*, 133 S.W.3d at 686–87; *Davies*, 158 S.W.3d at 61.

through hole in fence at house maintained by housing authority and injured plaintiffs sufficient to allege premises defect). Consequently, the trial court did not err by denying the City's plea to the jurisdiction regarding allegations of premises defects arising from the height of the habitat wall.

### b. Aviary Doors

Although the City denied that the aviary passageway doors were defective, it did not offer any evidence to contradict appellees' allegations. Instead, it contended that the doors did not cause the injury and only furnished the condition that made the injury possible. The City relied on *Dallas County Mental Health & Mental Retardation v. Bossley*, where an employee of a mental treatment facility unlocked the doors to leave, and a mental patient escaped, ran across a highway, and committed suicide by jumping in front of a truck. *Bossley*, 968 S.W.2d at 340–41. The Texas Supreme Court concluded that, although the condition and use of the unlocked doors was "part of a sequence of events that ended in his suicide," it was too attenuated from the patient's death to have caused it. *Id.* at 343. The *Bossley* court noted that "the requirement of causation is more than mere involvement." *Id.* It distinguished *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex. 1975), where a patient was injured after falling from a hospital bed that did not have side rails, by noting "[McGuire's] injury was immediate and directly related to the absence of restraints on the side of the bed. [Bossley's] death was distant geographically, temporally, and causally from the open doors at Hillside." *Bossley*, 968 S.W.2d at 343.

Although, as the Texas Supreme Court has recognized, it is difficult to distinguish a condition or use of property from a non-use of property for purposes of waiver of governmental immunity under the TTCA, *see generally Miller*, 51 S.W.3d 583 (*passim*), an allegation that property was directly involved in an actionable injury or death is generally sufficient to survive a plea to the jurisdiction. *See id.* at 590–92 (Hecht, J., concurring).

In this case, appellees alleged that Reichert was able to get her children out through the aviary passageway doors and into safety, but was unable to free herself when the doors allegedly malfunctioned. She alleged that when the doors would not open, she was trapped inside the glass enclosure with the gorilla, and the gorilla picked her up and threw her against the wall, causing her injuries.

We conclude that these allegations are sufficient to allege a premises defect that was directly involved in appellees' injuries, and the trial court did not err by denying the City's plea to the jurisdiction with respect to the aviary passageway doors. *See Michael*, 995 S.W.2d at 913 (rejecting contention that *Bossley* requires property to directly inflict injury and interpreting *Bossley* as requiring reasonably close causal relation between property and resulting injury).

### c. Roof/Speed Bumps/Surveillance Cameras

Appellees argued that the City's failure to install a roof and speed bumps and failure to have working surveillance cameras all raised the issue of whether the gorilla habitat lacked integral safety components. Claims that property lacked an integral safety component have been interpreted as claims regarding a condition or use of property. *See Tex. State Technical College v. Beavers*, 218 S.W.3d 258, 264 n. 1 (Tex.App.-Texarkana 2007, no pet.).

However, decisions about whether to install safety features are discretionary decisions for which the City

may not be sued unless the features are required by law. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 2005); [6] *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002); *Perez*, 180 S.W.3d at 911. Appellees did not allege that the law required the City to install a roof or speed bumps in the gorilla habitat. Consequently, the City's discretionary decisions regarding the installation of a roof and speed bumps cannot form the basis of a claim that governmental immunity has been waived. *See Perez*, 180 S.W.3d at 913.

■ But the surveillance cameras present a different issue. The City installed surveillance cameras in the gorilla habitat, with four in the area of the exhibit in which the gorilla was housed when it escaped. Two of those four cameras were not working the day the gorilla escaped. Appellees alleged that the failure to maintain the cameras in working order constituted the failure to provide an integral safety component. And a governmental unit may waive immunity under the use of property portion of section 101.021(2) if it provides property that lacks an integral safety component. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584–85 (Tex.1996); *Marroquin v. Life Mgmt. Ctr. for MH/MR Servs.*, 927 S.W.2d 228, 231–32 (Tex.App.-El Paso 1996, writ dism'd w.o.j.). Appellees alleged that the lack of that component caused their injuries because it prevented the City from immediately learning of the escape and sedating or recapturing the gorilla before it harmed them. The City argued that the lack of, or the lack of operational, surveillance equip-

ment is not a lack of an integral safety component, citing *Bonham v. Texas Department of Criminal Justice*, 101 S.W.3d 153 (Tex.App.-Austin 2003, no pet.), to support its contention.

In *Bonham*, a female inmate was sexually assaulted by a guard in the men's restroom. *Bonham*, 101 S.W.3d at 156. She sued the Texas Department of Criminal Justice, alleging that the facility lacked an integral safety component because it lacked adequate surveillance equipment in the men's restroom. *Id.* at 157. Bonham contended that this constituted a condition or use of property that made it possible for the guard to assault her, undetected by other employees. *Id.* The court concluded that her allegation of the lack of surveillance equipment was actually an allegation of non-use of that equipment, and that whether or where to locate surveillance equipment within the correctional facility was a discretionary governmental policy decision for which immunity was not waived. *Id.* at 159–60. It also stated that "we are not persuaded by Bonham's contention that surveillance equipment is an integral safety component of a men's restroom." *Id.* at 160.

Unlike in *Bonham*, the City had already installed surveillance cameras, but some of those cameras were not working. Consequently, the issue here is not whether cameras should be installed, which could be a discretionary decision, but how they were maintained. *See Flynn*, 228 S.W.3d at 657–58. The City also argued that appellees did not prove that the City could have prevented appellees' injuries even if the cameras had been working. But appellees

**6.** Section 101.056 provides:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

alleged that the failure to maintain the cameras in working condition allowed the gorilla to escape, undetected, and cause their injuries. And it is undisputed that the City knew that two of the cameras were not working in the area of the habitat from which the gorilla escaped.

Construing appellees' pleadings liberally, we conclude that appellees intend to prove that the failure to maintain the surveillance cameras was directly involved in causing their injuries and that appellees' allegations with regard to the surveillance cameras are sufficient to allege a claim for premises defect. *See Miranda*, 133 S.W.3d at 230; *Campos v. Nueces County*, 162 S.W.3d 778, 785–87 (Tex.App.-Corpus Christi 2005, pet. denied) (claim that county failed to correct non-functioning surveillance cameras alleged premises defect).

In summary, we sustain the City's first issue as it relates to allegations concerning the non-use of property, specifically, the failure to install a roof and speed bumps.[7] We overrule the City's first issue as it relates to allegations concerning the habitat wall, the aviary doors, and the lack of working surveillance cameras constituting the lack of an integral safety component.[8]

### B. Use of Personal Property

#### 1. Appellees' Pleadings

Appellees also alleged that governmental immunity is waived under the TTCA for use of tangible personal property because the gorilla was tangible personal property, the City used the gorilla to generate revenue by attracting paying customers to the zoo, and the City knew the gorilla was a wild animal with dangerous propensities. They alleged that the City placed the gorilla in an exhibit it knew lacked safety features. They contended that the City exhibited the gorilla because it benefited the zoo. They also contended that by possessing and controlling a wild and dangerous animal, the City is strictly liable for injuries caused by the gorilla when it escaped its outdoor exhibit. Appellees also alleged that their injuries were caused by the zoo employees "not using timely" the tranquilizer or other equipment to capture the gorilla. And they contended that the City failed to maintain adequate plans for sedation and recapture.

#### 2. The City's Plea to the Jurisdiction

In its plea to the jurisdiction, the City argued that appellees' allegation regarding the use of the gorilla is actually an allegation of non-use because the gorilla was not being used by a zoo employee at the time of the injuries and that placing a gorilla on exhibit is not the type of use of personal property contemplated by the TTCA. The City also argued that even if it was originally a use, the use stopped when the gorilla escaped and, as a result, the use of the gorilla did not cause appellees' injuries. The City argued that the allegation of use of the tranquilizer is also an allegation of non-use because it is undisputed that zoo employees never actually fired the tranquilizer guns that day. It also argued that the decision to use a freeze-dried tranquilizer is a discretionary act for which it is not liable. Additionally, the City argued that the legislature, by bringing the operation of a zoo within the parameters of the

---

**7.** We construe the allegation that the City failed to warn zoo patrons of the escape as part of appellees' general allegation about how the City allegedly breached its duty of care and not a separate allegation of the condition or use of tangible personal or real property.

**8.** We do not consider the City's first issue as it relates to the maintenance of the trees near the habitat or the failure to install an alarm system because the City did not address these allegations in its plea to the jurisdiction.

TTCA, intended that the common-law principles of strict liability should not apply to the operation of a zoo.[9]

### 3. Analysis

#### a. Use of the Gorilla

#### i. Exhibition of Gorilla as Use

Appellees alleged that zoo employees placed the gorilla in the exhibit as an attraction for zoo visitors to generate revenue for the zoo, knew the gorilla was hurling itself against the habitat wall and reaching high up the wall, and knew some of the surveillance cameras were not working in that part of the exhibit when they placed the gorilla there. The City did not offer any evidence to contradict these factual assertions. Instead, its argument below focused solely on whether it is possible to "use" the gorilla within the meaning of the TTCA, suggesting that it is not possible to use the gorilla unless a zoo employee was actually in the habitat handling the gorilla.

In oral argument before this Court, the City contended that the gorilla could never be "used" in the context of the TTCA. It cited *Texas A & M University v. Bishop*, 156 S.W.3d 580 (Tex.2005), to support its argument. In *Bishop*, the Texas Supreme Court concluded that two faculty advisers did not use a knife when they failed to supervise the director of a student play who decided to have the actors use a real knife instead of a prop. The faculty advisers in that case did not make the decision to use the real knife and were unaware of its use. The Court stated that the plaintiff's claims that the faculty advisers al-

lowed the use to happen by failing to properly supervise the production were really claims of negligent supervision, which, without more, was not a use of personal property that would waive governmental immunity.[10] *Id.* at 583.

We have not found, however, and the parties do not cite, any case discussing "use" in the context of an animal. Appellees cite *City of Houston v. Morua*, 982 S.W.2d 126 (Tex.App.-Houston [1st Dist.] 1998, no pet.), *overruled on other grounds by Smith v. Brown*, 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied), involving personal injuries caused by a wolf at the Houston zoo, but that was a premises defect case, not a use of personal property case.

Although they involved inanimate objects, we find two cases instructive. In *Texas State Technical College v. Beavers*, the court determined that allegations that two students sustained injuries when they used a hoist lacking safety features that had been furnished to them by their instructor were sufficient to allege a "use" within the meaning of the TTCA even though the instructor was not the operator of the hoist when the students were injured. *See generally Beavers*, 218 S.W.3d 258 (*passim*). And in *Retzlaff v. Texas Department of Criminal Justice*, 135 S.W.3d 731 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (op. on reh'g), the court determined that the installation of razor wire in a recreational area for prisoners was a "use" of personal property because the "TDCJ put the razor wire into service

---

9. The City's plea to the jurisdiction did not address appellees' allegations about the failure to maintain adequate plans for sedation and recapture, and we do not consider those allegations on appeal. *See First Trade Union Sav. Bank*, 133 S.W.3d at 686–87; *Davies*, 158 S.W.3d at 61.

10. The City argues that the gravamen of appellees' complaints against the City is that zoo employees failed to supervise the gorilla, which is not actionable under the act. The City's plea to the jurisdiction did not raise this below, and we cannot consider it. *See First Trade Union Sav. Bank*, 133 S.W.3d at 687; *Davies*, 158 S.W.3d at 61.

for a given purpose by placing the wire along the perimeter fence to deter inmates from escaping." *Id.* at 741.

■ To determine whether appellees pleaded use of the gorilla, we apply the definition of "use" established by the Texas Supreme Court and applied in other cases—"to put or bring into action or service; to employ for or apply to a given purpose." *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244, 246 (Tex.2004) (internal quotations and footnote omitted). In this case, appellees' pleadings sufficiently alleged that the City used the gorilla because the conduct alleged—the City used the gorilla as an attraction to generate revenue—satisfied the requirement that the City put the gorilla "into action or service" and employ the gorilla for "a given purpose." *See Cowan,* 128 S.W.3d at 246; *Beavers,* 218 S.W.3d at 265; *Retzlaff,* 135 S.W.3d at 741. Appellees also alleged that the gorilla escaped from this outdoor exhibit and attacked and injured them, satisfying the requirement that the "property must have been directly involved in an actionable injury...." *Miller,* 51 S.W.3d at 592 (Hecht, J., concurring).

Giving appellees' allegations a liberal construction, we conclude that appellees alleged a use of personal property and that the trial court did not err by denying the City's plea to the jurisdiction with respect to allegations of "use" of the gorilla.

ii. Strict Liability

■ The City also argues that there is no waiver of governmental immunity for strict liability claims because the statute does not state that exception in "clear and unambiguous language." We agree that the statute does not expressly use the words "strict liability." It provides, however, that when personal injury is caused by a condition or use of property,

the governmental unit is liable if a private person would be liable under Texas law. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). And under Texas law, a possessor of a wild animal is liable to others, except trespassers, for any harm caused by that animal resulting from a dangerous propensity which is characteristic of that class of wild animal, even if the person has used the utmost care to confine the animal or prevent it from causing harm. *Marshall v. Ranne,* 511 S.W.2d 255, 258 (Tex. 1974); *see Copley v. Wills,* 152 S.W. 830, 831–32 (Tex.Civ.App.-Dallas 1913, no writ) (duty of person who owns wild animal is to do so in manner that absolutely prevents occurrence of injury to others).

The City cites *DeWitt v. Harris County,* 904 S.W.2d 650 (Tex.1995), to support its argument that the TTCA does not waive immunity for strict liability claims because the statute does not state that waiver in clear and unambiguous language. *See id.* at 652. However, we note that in *DeWitt,* the Texas Supreme Court actually concluded that the language in section 101.021(2) was broad enough to encompass the respondeat superior theory of liability although the statute does not expressly waive governmental immunity for that type of claim. *See id.* at 653; Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). The City also cites *EPGT Texas Pipeline v. Harris County,* 176 S.W.3d 330 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd), for the proposition that strict liability does not apply to claims filed under the TTCA. However, that case does not apply here because it involved the interpretation of subsection (1), not subsection (2), which is involved in this case. *See id.* at 338–39.

■ The distinction is significant because the words used in subsection (1),[11]

11. Subsection (1) provides that a governmental unit is liable for

"proximately caused," "wrongful act or omission or the negligence," and "employee would be personally liable to the claimant according to Texas law," are quite different from the words used in subsection (2), "so caused by a condition or use of tangible personal property or real property" and "the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021(1)-(2). We assume the legislature used different language in each subsection for a reason. *See DeWitt,* 904 S.W.2d at 653. And in construing a statute, our objective is to determine and give effect to the legislature's intent. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). When possible, the legislature's intent is determined by reading the language used in the particular statute and construing the statute in its entirety. *Helena Chem.,* 47 S.W.3d at 493.

The Texas Supreme Court discussed the distinction between the language in subsection (1) and subsection (2) in *Texas Department of Transportation v. Able,* 35 S.W.3d 608 (Tex.2000). In that case, Mr. and Mrs. Able were hit head-on by another driver who was going the wrong way in a state high-occupancy-vehicle (HOV) lane. Mrs. Able was killed, and Mr. Able sued the Texas Department of Transportation (TxDOT) for a condition or use of real property—a premises defect under subsection (2)—that allowed the driver to go the wrong way in the HOV lane. TxDOT argued that the "so caused" language of

subsection (2) allowed liability only for the negligence and wrongful acts or omissions caused by its employees. *Id.* at 611. It contended that it could not be liable because none of its employees were involved in causing the premises defect. The Texas Supreme Court disagreed with TxDOT's interpretation of "so caused." *Id.* at 612. The court stated that the "limiting language in subsection (1)(b), requiring the employee to be personally liable to the claimant under Texas law, would be inapposite in the context of subsection (2)." *Id.* And it reiterated its holding in *DeWitt* that liability in a premises defect case is not based on the actions of the governmental unit's employee. *Id.* (citing *DeWitt,* 904 S.W.2d at 653). Instead, the court held that the theories of liability under subsection (2) are based on the different standards of care owed, some of which are not dependent upon the actions of any employee. *Id.* Ultimately, the court concluded that the plain meaning of subsection (2) encompassed a waiver of governmental immunity under a joint enterprise theory of liability and affirmed the jury's finding that TxDOT engaged in a joint enterprise. *Id.* at 616.

Courts have also interpreted subsection (2) to allow for a waiver of governmental immunity for other types of claims. *See, e.g., DeWitt,* 904 S.W.2d at 653 ("[S]ubsection 2 is broader than subsection 1 in that it encompasses governmental liability based on respondeat superior for misuse of tangible personal property other than motor-driven vehicles and equipment."); *Beavers,* 218 S.W.3d at 264 (immunity waived if governmental unit provides property

---

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of

a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law[.]

Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1).

lacking integral safety component); *see also Perez*, 180 S.W.3d at 911 (governmental immunity waived for injuries caused by negligent implementation of policy). Notably, none of these claims are specifically identified in subsection (2).

■■■ To decide whether the language in subsection (2) is clear and unambiguously waives immunity for strict liability claims such as those made in this case, we look at whether the allegations satisfy the requirements of the statute. The first requirement is that the alleged injury was "caused by a condition or use of tangible personal property or real property." *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). The allegation here is that injury was caused by use of tangible personal property, which appellees contend is the gorilla. The other requirement is that "the governmental unit would, were it a private person, be liable to the claimant according to Texas law." As we noted, a possessor of a wild animal is liable to third parties based on a theory of strict liability. *See Marshall*, 511 S.W.2d at 258; *Copley*, 152 S.W. at 831–32. We conclude that subsection (2) waives immunity for strict liability claims in this unique context. *See DeWitt*, 904 S.W.2d at 653.

*b. Use of Tranquilizer*

■■■ It is undisputed that the tranquilizer guns were never fired at the gorilla. Although City employees reconstituted the freeze-dried tranquilizer, and, in that sense, "used" the tranquilizer, those employees did not have an opportunity to inject the tranquilizer into the gorilla before SWAT officers shot and killed it. Therefore, we construe this allegation as the non-use of the tranquilizer. *See Miller*, 51 S.W.3d at 587–88 ("claims involving the failure to use, or the non-use of property, do not waive sovereign immunity").

Appellees' pleadings also allege that their injuries were caused by the City's failure to have a tranquilizer gun ready. But this allegation is one of non-use of the gun because it is undisputed that the tranquilizer gun was not used. *See id.* As a result, we conclude that the trial court erred by denying the City's plea to the jurisdiction with respect to the allegations of non-use of the tranquilizer and tranquilizer gun.

In summary, we sustain the City's third issue as it relates to allegations of non-use of the tranquilizer and tranquilizer gun. We overrule the City's third issue as it relates to allegations of use of the gorilla. We overrule the City's fourth issue which argued that the TTCA does not waive governmental immunity for strict liability claims.

### Conclusion

We reverse the trial court's denial of the City's plea to the jurisdiction as it relates to claims regarding speed bumps in and a roof on the gorilla habitat, the tranquilizer, and the tranquilizer gun. To the extent these pleading deficiencies may be cured, we remand to the trial court to afford appellees an opportunity to amend. *See Miranda*, 133 S.W.3d at 226–27. In all other respects, the trial court's denial of the City's plea to the jurisdiction is affirmed.

MAZZANT, J., Dissenting.

Amos L. MAZZANT, Justice, dissenting.

I respectfully dissent from the majority's holding that the City is not immune from appellees' claims based on the City's alleged use of the escaped gorilla. I join the majority opinion in all other respects.

The Texas Tort Claims Act is a limited waiver of the City's governmental immuni-

ty. It provides that a city or other governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 2005). The question presented is whether appellees have alleged or can allege that their injuries were caused by the City's "use" of the gorilla. The supreme court has defined "use" in this context to mean "to put or bring into action or service; to employ for or apply to a given purpose." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex.2004) (internal quotations and footnote omitted). Simply making personal property available for others to use is not sufficient, nor is the "use" requirement satisfied by the mere involvement of personal property in an accident. *Id.* at 246 & n. 12. The "use" must proximately cause the injury. *Tex. Dep't of Criminal Justice v. Hawkins*, 169 S.W.3d 529, 534 (Tex.App.-Dallas 2005, no pet.).

The fact that the tangible personal property in question happens to be a live animal does not change the meaning of "use" set forth in *Cowan*. For a governmental unit to "use" an animal, it must employ the animal to accomplish a task or to serve a purpose. In this case, the majority holds that the City "used" the gorilla by exhibiting it to the public and that there is a sufficiently close causal nexus between this use and appellees' injuries to trigger the waiver of immunity. I cannot agree. Even assuming that the City was "using" the gorilla while exhibiting it in its enclosure and was not merely making the gorilla available for others to use, that use ceased once the gorilla escaped from its enclosure. Once the gorilla escaped, the City's display of the gorilla became too attenuated from the appellees' injuries to support the conclusion that the City's use

of the gorilla caused those injuries. *See id.* at 533 (government did not "use" firearms that inmates stole during prison escape and later used to kill a third person). I note, however, that this interpretation of "use" does not wholly eliminate the possibility of viable tort claims based on animal attacks, as the surviving premises-liability claims in this case illustrate.

Accordingly, I respectfully dissent from the majority's affirmance of the trial court's denial of the City's plea to the jurisdiction as it relates to appellees' claims that the City is liable for "use" of the gorilla, whether under a theory of negligence, strict liability, or otherwise. I join in the remainder of the majority's opinion and judgment.