**Dissenting Opinion Filed September 8, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00376-CV

**THE UNIVERSITY OF TEXAS AT DALLAS, Appellant**
**V.**
**RICHARD J. ADDANTE, PH.D., Appellee**

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-03714-A**

## DISSENTING OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Partida-Kipness

Based on the record before us, I would affirm the trial court's order denying appellant's plea to the jurisdiction. Because the majority does not, I dissent.

The University of Texas at Dallas (UTD) challenged the existence of jurisdictional facts to support Richard J. Addante's claims against it. In such cases, the court must consider the evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). If the movant asserts and supports its contention that the trial court lacks subject-matter jurisdiction, the non-movant must raise a jurisdictional fact issue to avoid dismissal. *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied) (citing

*Miranda*, 133 S.W.3d at 228). Applying the legal sufficiency standard to the parties' evidence, the court must take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor while not disregarding evidence and inferences unfavorable to the non-movant if reasonable jurors could not. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). A non-movant need only raise a genuine issue of material fact to overcome a challenge to the trial court's subject-matter jurisdiction. *Clark*, 544 S.W.3d at 771. I will address four aspects in which I think the majority has erred in applying this standard.

## I.    Addante's Evidence

At the outset, I note that the majority paid only scant attention to the key issue on appeal: the admissibility of Addante's evidence. Addante filed three responses, three declarations, and multiple documents in response to UTD's plea. UTD objected to Addante's first two declarations as containing conclusory statements, legal conclusions, and hearsay. The trial court overruled UTD's objections, and UTD contends on appeal that this was an abuse of discretion. The majority summarily concludes Addante's declarations and evidence are not competent evidence. I disagree.

Our review of the trial court's ruling on UTD's plea mirrors that of a traditional summary judgment. *Clark*, 544 S.W.3d at 771 (citing *Miranda*, 133

S.W.3d at 225–26). Rule 166a requires affidavits supporting or opposing summary judgment to be made on personal knowledge and state facts that would be admissible in evidence. TEX. R. CIV. P. 166a(f). The rule also requires that sworn or certified copies of documents referred to in an affidavit be attached to the same. *Id*. However, defects of form in affidavits or attachments "will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." *Id*. The record does not reflect that UTD objected to Addante's declarations on these grounds. Regardless, "[e]ven if the trial court abused its discretion in admitting certain evidence, reversal is only appropriate if the error was harmful, i.e., it probably resulted in an improper judgment." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012).

UTD objected that certain statements contained in Addante's first two declarations were conclusory, legal conclusions, or hearsay. Without analyzing any of the statements at issue, the majority summarily concludes that Addante's declarations "are replete with conclusory statements that lack support" and "enumerate actions, acknowledgements, and admissions attributed to UTD [that are] without support and outside of Addante's personal knowledge." To the contrary, many of the allegedly conclusory statements cited by UTD are merely statements of fact. For example, Addante declared that McIntyre "acknowledged that I 'did a good job' and 'was doing fine.'" Addante also declared, "I filed an EEOC charge based on the discrimination and retaliation. UTD then terminated my employment." UTD

–3–

contends these are conclusory statements, yet they are statements of fact susceptible to being readily controverted. *See Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). There are many other statements like these that the majority fails to analyze.

Although Addante's declarations do contain legal conclusions, the same statements also contain proper statements of fact. Thus, the statements are not entirely inadmissible. For example, Addante's first affidavit offered as "evidence of pretext" that he "did not receive the lowest evaluations" and "[o]ther employees received lower evaluations and were not disciplined or terminated." Although he may not opine as to whether such facts constitute evidence of pretext, the facts of his evaluations and the other employees' treatment are not legal conclusions.

UTD contends that documents attached to Addante's first declaration and certain statements in Addante's second declaration are inadmissible hearsay. The first document at issue is an e-mail Addante sent to a colleague shortly after filing his sexual harassment complaint that contains a discussion of the circumstances surrounding his complaint. Addante included this document in support of his contention that UTD retaliated against him for filing the sexual harassment complaint. The parties do not contest whether he actually filed the complaint; thus, the e-mail was not offered to prove the truth of the matter asserted, and it was not hearsay. *See* TEX. R. EVID. 801(d). Even if it was error to admit the e-mail, however, such error was harmless because it was cumulative of other evidence offered by UTD. *Waldrip*, 380 S.W.3d at 132. The remaining documents are letters and e-mail

–4–

correspondence between Addante and students and colleagues regarding his nomination for various awards. Addante does not explain why he attached these documents to his first declaration, but they appear to be circumstantial evidence of pretext offered to undercut UTD's contention that he was not a good teacher. However, UTD does not contest the matters asserted in the documents, and Addante did not offer the documents to prove the matters asserted therein. Accordingly, they are not hearsay. *See* TEX. R. EVID. 801(d).

UTD likewise contends that the "documents and document excerpts inserted in" Addante's second declaration are hearsay. Addante attested that the documents were produced by UTD as part of discovery. Indeed, Addante's second declaration even cites UTD's Bates numbers for the documents excerpted. "Discovery products not on file with the clerk may be used as summary judgment evidence" if copies or notice of intent to use the material is filed and served on the parties. TEX. R. CIV. P. 166a(d). UTD did not object that Addante failed to provide copies or notice. Even assuming it was error to admit the documents, however, UTD failed to show how these documents probably caused the rendition of an improper judgment. *See Waldrip*, 380 S.W.3d at 132. Based on the record before the Court, I would conclude the trial court did not abuse its discretion in overruling UTD's objections. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam).

## II. Protected Activities

The majority concludes that Addante's April 10, 2014 anonymous sexual harassment complaint regarding Dr. Michael Rugg, co-director in UTD's Center for Vital Longevity (CVL) and Addante's supervisor at the CVL, is the only protected activity at issue. In arriving at this conclusion, however, the majority summarily disregards Addante's evidence. When properly considered, however, Addante's evidence is sufficient to establish that he not only reported sexual harassment but also opposed apparent gender discrimination.

Specifically, Addante sent a letter to Acting Provost Inga Musselman on August 3, 2015, shortly after being reappointed for the 2015-2016 year. In the letter, Addante complained of a disparity in pay between himself and Dr. Eva LaDow. Addante stated that he did not want UTD to "inadvertently become non-compliant with federal law prohibiting gender discrimination in pay for its Senior Lecturers." He then outlined the pay gap between himself and LaDow. Purportedly quoting the EEOC, he also noted, "[T]he Equal Pay Act requires that men and women in the same workplace be given equal pay for equal work. The jobs need not be identical, but they must be substantially equal." Addante informed Musselman that "the current pay discrepancy is the type of discrepancy forbidden by Title IX statutes" and offered that she should correct the discrepancy to remain "compliant with federal Title IX policies of equal pay for equal work."

Incredibly, the majority concludes that Addante failed to identify the letter as a protected activity in the proceedings below. The record reflects, however, that Addante raised the issue in his petition, response to UTD's plea to the jurisdiction, and EEOC charge. Specifically, Addante asserted in his petition that "UTD may not treat faculty members differently based upon unlawful discrimination, including sex discrimination" and that "UTD treats Dr. Addante differently because of his gender. For example, UTD treated Dr. Addante differently in compensation to equitable employees of other gender . . . ."

Addante's supplemental response to UTD's plea include among Addante's "protected activities" that he "opposed and reported discrimination." Directly referencing the letter, his initial response states:

> When Dr. Addante inquired why [he was denied a standard merit raise], and noted a gender pay gap for instructors, the UTD President (who oversaw the sexual harassment claim investigation but never once saw Addante teach) then sent Dr. Addante a hostile letter threatening to fire him and falsely denigrating his teaching performance.

His response also devotes an entire subsection to "[p]rima facie case of gender discrimination" in which Addante contends that he and "Dr. Ladow were similarly situated" yet he was paid less. As evidence, Addante included his declaration that incorporated a timeline citing the letter and asserting that Wildenthal's September 4, 2015 response was "retaliation for . . . whistleblower of differential treatment based on gender." His response also cited evidence contained in UTD's own plea addressing Addante's gender discrimination claim. UTD included Addante's letter

as an exhibit attached to its plea. UTD also included Musselman's affidavit in which Musselman noted Addante's letter, stating, "Dr. Addante emailed to accept his reappointment and also ask why he did not receive a raise and was not paid the same as another Senior Lecturer I at UTD, Dr. Eva LaDow."

Finally, Addante alleged in his EEOC charge that UTD "discriminated and retaliated against me on the basis of sex." Citing the letter, Addante asserted:

> I accepted the offer for continued employment at a lower rate, reluctantly, out of necessity. Included with my acceptance is a letter respectfully requesting a compensation that is commensurate with experience and which is compliant with Title IX for gender equity among equally-qualified peers in the same position (e.g. Dr. Eva Ladow's $75,000), as well as the basic standard of living raise that had been provided every year prior.

Thus, the record reflects ample evidence that Addante identified the August 3, 2015 letter to Musselman as a protected activity. *See* TEX. LABOR CODE § 21.055 (prohibiting retaliation against a person who "opposes a discriminatory practice").

## III.   Causal Link

To state a prima facie case of retaliation, Addante needed only show "a minimal causal link between the protected activity and the adverse action." *Clark*, 544 S.W.3d at 789. The majority focuses on one protected activity: Addante's sexual harassment complaint. With respect to this activity, the majority addresses two points: (1) Addante's contention that B. Hobson Wildenthal, Provost and President *ad interim* of UTD at the time of the events in question, knew Addante was the anonymous complainant; and (2) the temporal proximity between the complaint and

the denial of Addante's reappointment. The majority concludes there is no competent evidence showing Wildenthal knew Addante was the complainant and there is no temporal proximity between the two events. Setting aside my disagreement that the sexual harassment complaint is the only protected activity at issue, I disagree with the majority's analysis as to the sexual harassment complaint.

Despite concluding that Addante's declarations are inadmissible, the majority cites UTD's EEO Director Marco Mendoza's investigation notes, which Addante's second declaration discussed, as the only evidence of Wildenthal's knowledge. To the contrary, there is much more evidence in the record regarding this question, including evidence offered by UTD. Specifically, Addante's EEOC charge, attached to UTD's plea, contains Addante's narrative in which he states that he sent an e-mail to Mendoza on July 17, 2014, seeking a copy of the investigative report. Addante alleges that he received a response the next day from Mendoza and "UT Human Resource Director & Associate Vice President Collen Dutton." There is no evidence, however, that Addante included Dutton or consented to Dutton's participation in the discussion with Mendoza. Addante's narrative also indicates that he was approached by "UTD Director of Audit and Compliance" Toni Stephens, who acknowledged that she knew about the investigation. The circumstances in which Stephens approached Addante imply that she also knew he was the complainant. Addante's narrative likewise recounts a meeting with Dr. James Bartlett, one of Addante's supervisors, in which Bartlett "called [him] out for having reported an anonymous

–9–

report of sexual harassment" against Rugg. Addante notes that Bartlett should not have known about the complaint.

Other evidence included in Addante's second declaration shows that Rugg and Wildenthal could have deduced that the anonymous complainant was Addante. Specifically, Addante included excerpts from notes taken of witness interviews. The notes, produced by UTD in discovery, reflect witness testimony that Rugg's CVL lab was "a small lab" such that the witness was "not sure [Rugg] couldn't know who complained." Addante also contended the Ethics and Compliance Hotline report, also produced by UTD, "lists five different people, including three women and two male post doc employees." He asserted that Wildenthal could deduce his identity from this report because "there were nearly no other options of male post docs." Additionally, Addante asserted in his declarations and deposition testimony that Rugg's wife was Wildenthal's assistant. Thus, if Rugg figured out who the complainant was, it is reasonable to conclude that his wife conveyed that information to Wildenthal. Although Addante does qualify his assertion as merely his belief, UTD did not contest or object to this assertion. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (failure to object to defects in form results in waiver).

Additionally, Addante sent an e-mail to a colleague shortly after filing the complaint. In the e-mail, Addante discussed the events leading up to the complaint. Addante even attached a copy of the complaint to the e-mail. Moreover, Addante

admitted in the e-mail that he initially informed another person in the CVL lab of the complaint before filing it with HR. Addante stated:

> I had informed one of the ladies in charge of our Center, and reported it to her as a first pass. But ultimately, she really was neither the proper person to inform nor did she have the authority to do anything about it, since she was effectively the head secretary there and it was her boss too.

This e-mail shows that at least two other people knew Addante was the complainant, one of whom was Addante's co-worker under Rugg. When viewed in its entirety, evidence produced by both parties shows that other persons knew about Addante's complaint. This is sufficient to raise a fact question about whether Wildenthal knew and, if so, when did he so learn. *See Clark*, 544 S.W.3d at 771 (non-movant need only raise a fact issue to survive a plea to the jurisdiction).

The majority attempts to diminish any possibility that Wildenthal knew of Addante's identity by pointing out that he approved Addante's initial hire "on or before July 3, 2014—almost three months after his April 10, 2014 complaint." Dean Bert Moore's initial offer letter to Addante was dated July 3, 2014. Wildenthal's affidavit, offered by UTD in support of its plea, indicates, however, that UTD's "budget decisions are normally made in April or May, but decisions regarding *reappointment* of faculty are not made final until around August 15th of each year when the Provost issues formal reappointment letters." (emphasis added). Thus, the decision to hire Addante was made in "April or May," not July. Considering Mendoza's investigation did not conclude until June, it is unlikely that Wildenthal

–11–

knew Addante was the anonymous complainant when he approved his hire in "April or May." Indeed, it is reasonable to conclude that he learned about Addante only after he was hired, and he was unable to act on the decision until Addante had been reappointed. Wildenthal admits in his declaration that he did not know Addante had been reappointed and assumed he would not be because he had already voiced his displeasure over the hire to Moore. Thus, the earliest Wildenthal could have taken adverse action against Addante was after he learned Addante had been reappointed.

The majority's error is further compounded by the majority's failure to consider Addante's letter to Musselman. According to Wildenthal's affidavit, "decisions regarding *reappointment* of faculty are not made final until around August 15th of each year." Consistent with this testimony, Musselman sent the reappointment letter to Addante on August 1, 2015, and Addante sent his letter concerning his compensation to Musselman on August 3, 2015. Wildenthal issued his September 4, 2015 letter voicing his displeasure with Addante's reappointment immediately after he was reappointed and after Addante complained of gender discrimination. This one-month gap is close enough in temporal proximity to show causation. *See Clark*, 544 S.W.3d at 790 ("Temporal proximity is relevant to causation when it is 'very close.'").

Even though temporal proximity generally requires the protected action and retaliation to be close in time, the seventeen-month gap between Addante's April 10, 2014 complaint and Wildenthal's September 4, 2015 letter does not disprove

–12–

causation as to Addante's sexual harassment complaint. As discussed, Wildenthal could not have learned that Addante was the anonymous complainant until after Addante had already been hired. If Wildenthal assumed Addante would not be reappointed, as his affidavit contends, the earliest he could have taken action would be after Moore reappointed Addante in August of 2015. Thus, the seventeen-month gap between Addante's complaint and Wildenthal's letter does not disprove causation. Accordingly, I would conclude that Addante proved a prima facie case of retaliation.

## IV. Pretext

Under the *McDonnell Douglas* framework, once a plaintiff provides prima facie proof of his claim and the defendant provides evidence of a legitimate, non-retaliatory reason for the adverse action, the burden shifts back to the plaintiff to raise a fact issue by presenting some evidence the defendant's articulated reason was false or not credible. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Circumstantial evidence of pretext may include the employer's failure to follow its usual policies and procedures in carrying out the challenged employment actions; discriminatory treatment in comparison to similarly situated employees; knowledge of the discrimination charge by those making the adverse employment

decision; evidence the stated reason for the adverse employment decision was false or not credible; and the temporal proximity between the employee's protected activity and the adverse employment decision. *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 494 (Tex. App.—Dallas 2013, no pet.); *see also Clark*, 544 S.W.3d at 790. To carry this burden, the plaintiff must rebut each non-retaliatory reason articulated by the employer. *Crutcher*, 410 S.W.3d at 493 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

UTD contends it asserted three legitimate, non-retaliatory reasons for denying Addante's reappointment and merit raise: poor course evaluations for the Fall 2014 semester, Wildenthal's disapproval of hiring "UTD postdocs" for non-tenured teaching positions, and Wildenthal's understanding that Moore would not reappoint Addante for the 2015-2016 year. According to the majority, Addante addressed only one of these reasons: poor course evaluations. Even then, the majority concludes that Addante failed to produce competent evidence to rebut that reason. Accordingly, the majority concludes that Addante failed to rebut all of UTD's legitimate, non-retaliatory reasons for its adverse actions against Addante. I disagree.

In support of its contention that it offered three reasons for the adverse actions, UTD directs the Court to Wildenthal's affidavit and September 4, 2015 letter. In each document, Wildenthal stresses that Addante was not reappointed due to low student evaluations in the Fall 2014 semester. Although he also voiced his displeasure with hiring "UTD postdocs" to non-tenured positions, he does not claim

–14–

that UTD is prohibited from doing so or that this is the reason Addante was released. Rather, he merely stated his understanding that Moore would not reappoint Addante for the 2015-2016 year because he had voiced his displeasure with the practice to Moore. Despite this, Moore reappointed Addante anyway. Thus, the only reason provided in either of these documents is Addante's poor course evaluations for the Fall 2014 semester. Addante recognized in his first supplemental response to UTD's plea that UTD had offered only this one reason.

The record reflects evidence sufficient to raise a fact question as to whether UTD's sole reason was merely pretext. As I have previously discussed, Wildenthal issued his September 4, 2015 letter one month after Addante informed Musselman of apparent gender discrimination. The temporal proximity between these two events is sufficient circumstantial proof of pretext. *See Crutcher*, 410 S.W.3d at 494. Addante also provided evidence via his declarations that his student evaluation scores were not the lowest in the school, yet instructors with lower scores were allowed to remain. This evidence of discriminatory treatment in comparison to similarly situated employees is likewise proof of pretext. *See id*. Additionally, although Wildenthal indicated in his letter and affidavit that he disapproved of hiring "UTD postdocs" into non-tenured teaching positions, the record reflects that he knew of and approved of Addante's initial appointment to such a position in 2014. This viewed in light of Moore's decision to reappoint Addante after Wildenthal allegedly told him not to raises a question of credibility. *See id*. Addante's evidence

also included a recommendation letter from Bartlett to an unnamed institution. In the letter, Bartlett extols Addante's virtues as a teacher and poses the question: "You might ask why we are not ourselves considering [Addante] for a tenure track position." Bartlett cites only budget limitations and the need for "animal-based System Neuroscience faculty" as the reason UTD did not consider Addante for a tenure track position. Bartlett's letter casts further doubt on Wildenthal's credibility. *See id*. As previously noted, the evidence is also sufficient to raise a question of fact as to whether Wildenthal knew that Addante was the anonymous complainant on the April 10, 2014 sexual harassment complaint. *See id*. Indeed, the undisputed evidence of hiring decisions being made by people other than Wildenthal, and in defiance of Wildenthal's wishes, is sufficient to raise a question of whether Wildenthal was the sole decision-maker. *See id*. Moreover, the undisputed evidence shows that Wildenthal knew Addante had submitted a gender discrimination complaint to Musselman on August 3, 2015. *See id*. Accordingly, I would conclude that Addante successfully rebutted UTD's legitimate, non-retaliatory reasons for its decisions not to reappoint him and deny his merit raise.

The evidence presented by both parties is sufficient to provide prima facie proof of Addante's claims and rebut UTD's legitimate, non-retaliatory reasons for not reappointing Addante and denying his merit raise. Under this record, I would affirm the trial court's order denying the plea to the jurisdiction.

Because the majority concludes otherwise, I respectfully dissent.


/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE


200376DF.P05